COURT OF APPEALS OF VIRGINIA

Present:  Judge Annunziata, Senior Judges Duff and Hodges
Argued at Alexandria, Virginia


FIONA ELIZABETH MARSH
                                        OPINION BY
v.    Record No. 3005-98-4          JUDGE WILLIAM H. HODGES
                                         MAY 30, 2000
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Michael P. McWeeny, Judge

          Julie Gossman, Assistant Public Defender, for
          appellant.

          Donald E. Jeffrey, III, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     A jury convicted appellant, Fiona Elizabeth Marsh, of

feloniously making false representations to obtain credit in

violation of Code § 18.2-186(B).  On appeal, appellant contends:

(1) the evidence was insufficient to support the conviction; (2)

the trial court erred in refusing to grant a jury instruction on

a lesser-included offense; and (3) the trial court erred in

refusing to allow appellant to provide a voice exemplar to the

jury without being placed under oath and without being subject

to cross-examination.  Finding no reversible error, we affirm.

                           BACKGROUND

     On January 5, 1998, Kenddrie Utuk, a salesperson at

Stohlman Volkswagen, sold a white Volkswagen Jetta to a customer

calling herself Fatou Kpan (the person who acquired the car from Utuk will be referred to hereafter as "Fatou"). Before gaining possession of the car, Fatou spoke with Utuk for four hours. Utuk recalled that Fatou spoke with a West African accent, a vocal trait he recognized because he was from Nigeria. In order to lease or purchase the car, Fatou had to offer proof of insurance and place a down payment on the car. In acquiring the car that day, Fatou offered a GEICO auto insurance policy number and paid $1,000. In order to be extended credit for the purchase of the car, she completed a credit application. As proof of identification, she offered a photocopy of a driver's license, depicting her photograph, listing her name as Fatou Kpan and a "former" address in Reston. Claiming to be a college graduate, she said she currently lived in Falls Church and worked as an office manager in Alexandria. As proof, she produced a phone bill for her private residence and a pay stub from her "employer." Because of Fatou's claims that she was employed and possessed a college degree, the dealership extended credit totaling $16,879 towards the purchase of the car, pending approval by the dealership's bank. After signing a temporary certificate of title, Fatou drove the car from the dealer's lot.

Some later time, Utuk contacted the purported insurance company. As a result of that contact, Utuk knew "something was wrong," so he attempted to contact Fatou in order to recover the car. No one answered the phone at any of the numbers Fatou had

-

listed on her application form. About two weeks after obtaining the car, Fatou contacted Utuk to see if the financing had been arranged for the car. After being asked to bring the car back, Fatou told the salesman she would visit the dealership that afternoon. A few hours later, she called to say she was on her way. Fatou never appeared or returned the car.

Stohlman Volkswagen contacted the police to investigate the matter, supplying investigators with the photocopied license Fatou had supplied with her credit information. On February 6, 1999, having driven to the address on the photocopied driver's license, Detective Greg Holloway found appellant, who matched the picture on the license, leaving the residence in a black Mitsubishi. Startled upon seeing the officer, appellant drove away quickly. Holloway followed and pulled her over at a gas station. When asked to produce identification, appellant gave Holloway a driver's license containing a photograph of the same person depicted on the photocopy provided to Utuk but with the name Fiona Elizabeth Marsh and with an address in Ashburn, Virginia.

When questioned by Holloway in the parking lot, appellant denied knowing Fatou Kpan. When questioned about the Jetta, she became evasive and attempted to flee on foot. Holloway apprehended her and placed her under arrest.

During subsequent questioning by the police, appellant initially denied knowing about the car. Though she would not

-

confess to completing the credit application, appellant eventually admitted to having the car in her possession and giving it to "someone in Maryland"; however, she refused to provide the current location of the car. When asked about Fatou Kpan, appellant told Holloway "that she knew of her as a distant relative or something like that, and that she didn't know where she was living and didn't know how [she] could get a hold of her." Later that day, with no assistance from appellant, the police located and recovered the Jetta in Maryland.

At trial, Fatou Kpan testified that appellant had lived in her house for a couple of months from December 1998 through January 1999. Kpan recalled an incident during that time in which she discovered that her state identification card was missing from her purse. Later that day, appellant gave the card to Kpan, saying that she had found it in the grass outside the house. Kpan recalled that the identification card was dry despite the fact that it had been raining all day. When examining the photocopied identification card, Kpan testified that the name and social security number on the card were hers, but the person depicted in the photograph was appellant.

Appellant sought to show she was the victim of a misidentification. Holloway said he did not ask Utuk to identify appellant from a police lineup because

> when you do a line-up, you're dealing with
> unknowns. And I already had a suspect.
> And, actually, when I had [appellant] in

-

> front of me [at the police station], I
> talked to [Utuk] on the phone, he told me "I
> know exactly who she is."  He described her
> to a tee.  He gave me a picture of her.  He
> sent me this picture.  I had it sitting in
> front of me.  There was no doubt who it was.

At the conclusion of the Commonwealth's evidence, appellant moved to strike the evidence, claiming that the Commonwealth had failed to prove she had failed to pay for the car because there had never been a demand for payment pursuant to Code § 18.2-186(B).  The trial court denied the motion.

Appellant's counsel then sought the court's permission to allow appellant to admit a voice exemplar into evidence without being put under oath.  Defense counsel claimed that such an exemplar would go to Utuk's claims that the person with whom he spoke had a West African accent.  Appellant argued as follows:

> And I think it's proper, just as in the O.J.
> case or any other case, where they made him
> put on gloves, it's not something that I
> could object to, certainly, to make
> innocuous statements as a voice example are
> the same as hand, hair, handwriting samples,
> or putting on a glove, or anything else.
> And I'd like to put that on so that the
> jury can hear my client talk.  She's not
> going to take the stand at this point.  And
> that goes to whether or not this was the
> same person.  I mean, if you have two people
> who look alike and one of them sounds like a
> Southern belle and one of them sounds like
> they're from Massachusetts, like JFK, I
> think that's relevant to the jury.
> [Utuk] said it was a West African
> accent.  And I think that's something
> clearly within the bounds of what a jury,
> like weight, height, drunkenness, things
> like that, speech, that the jury can do
> - handwriting, that a jury can look at.

-

Appellant's counsel then suggested that he and the prosecutor be allowed to think of some statements that appellant could say on the stand for the jury. He also argued that the prosecution should not be allowed to cross-examine her.

The Commonwealth objected, noting that such a voice sample would be unreliable because anyone could fake an accent. In defense of the request, appellant noted that handwriting samples are admitted without cross-examination. Appellant then suggested that, after providing the voice exemplar, Utuk be recalled so the Commonwealth could ask him whether appellant's voice was the same voice he heard. The court ruled that the voice exemplar evidence would be testimonial and denied appellant's request to take the stand and speak without being put under oath.

SUFFICIENCY OF THE EVIDENCE

Appellant contends there was insufficient evidence that the car dealer demanded payment and that appellant failed to pay.

Code § 18.2-186(B) provides, in pertinent part:

> Any person who knows that a false statement has been made in writing concerning the financial condition or ability to pay of himself or of any person for whom he is acting, . . . and who, with intent to defraud, procures, upon the faith thereof, for his own benefit, . . . any such delivery, payment, loan, credit, extension, discount making, acceptance, sale or endorsement, and fails to pay for such loan, credit or benefit so procured, shall, if the value of the thing or the amount of the

-

loan, credit or benefit obtained is $200 or
more, be guilty of grand larceny . . . .

On appeal, when the sufficiency of the evidence is challenged, "we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987). So viewed, the evidence proved that, on January 5, 1998, Stohlman's Volkswagen extended credit to appellant based on information she supplied and a $1,000 down payment.

The information supplied by appellant was entirely fraudulent, consisting of false addresses, false telephone numbers, a non-existent insurance policy and a falsified identification card. Having tricked Utuk and the dealership into trusting her, appellant signed a temporary registration certificate and took possession of the Jetta, driving it off the lot.

The record established that the dealership extended an amount of credit to appellant to aid in the purchase of the Jetta. It gave appellant credit totaling $16,879 in exchange for truthful information about her financial situation and a monetary down payment. By refusing to give the required accurate information as to her financial situation, appellant intentionally failed to give proper consideration for the extension of credit. As such, the evidence showed that she

-

failed to pay for the $16,879 in credit extended to her by the dealership.

In addition to proscribing failure to pay for credit, Code § 18.2-186 also proscribes the failure to pay for a "sale." Here, the evidence also proved that a sale occurred.

When attempting to define terms in one part of the Code, courts should read a statute with "a view toward harmonizing it with other statutes.  Because the Code of Virginia is one body of law, other Code sections using the same phraseology may be consulted in determining the meaning of a statute."  Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 425 (1992) (citations omitted).  The term "sale" means the "passing of title from the seller to the buyer for a price."  Code § 8.2-106.  The price in question can be "payable in money or otherwise."  Code § 8.2-304.  Title passes at the time of "physical delivery of the goods."  Code § 8.2-401.  Absent a valid agreement to the contrary, "payment is due at the time and place at which the buyer is to receive the goods."  Code § 8.2-310(a).

Even though appellant still owed the dealer $16,879 for the Jetta, the sale was completed when she took possession of the car.  Before leaving the dealership, appellant signed a temporary certificate of registration for the car, thereby vesting ownership of the car in her.  See Code § 46.2-1542 (stating that the issuance of a temporary certificate of

-

ownership "shall have the effect of vesting ownership in the purchaser for the period that the certificate remains effective").  By taking the car from the dealership, appellant completed the sale of the car, having acquired both title and possession of the automobile.  See State v. Small, 873 S.W.2d 895, 898 (Mo. App. 1994) (holding that because defendant had used false information to gain the car, a failure to breach a financing contract did not matter because "the crime was completed when defendant drove the car off [the] lot").

In Lewis v. Commonwealth, 28 Va. App. 164, 503 S.E.2d 222 (1998), the defendant, who was convicted of grand larceny, claimed that a temporary certificate of ownership did not give him sufficient title to satisfy the elements of grand larceny. See id. at 168, 503 S.E.2d at 223.  In rejecting that argument, we stated that possession of the car and a conditional title were enough to justify a conviction for grand larceny.  See id. at 168-69, 503 S.E.2d at 223-24.  To decide otherwise would "'reward the industrious and designing thief who, having perpetrated the proper fraud by making false representations, could escape criminal liability as long as the official title remained with the owner in security.'"  Id. at 169, 503 S.E.2d at 224 (quoting State v. Meado, 472 N.W.2d 567, 571 (Wisc. Ct. App. 1991)).  Therefore, grand larceny of a car acquired by the giving of false information occurs not after the first missed payment, but at the moment the car leaves the dealership.

-

The dealer gave appellant the opportunity to return the car, but appellant refused to act accordingly. After police apprehended appellant, she admitted possessing the car, but refused to cooperate in its recovery. In essence, appellant failed to pay for the sale of the car or the extension of credit despite having acquired possession and title to the car. Accordingly, there was sufficient evidence of a failure to pay to sustain appellant's conviction.

## REFUSED JURY INSTRUCTION

On appeal, appellant claims the trial court erred "by failing to instruct on the lesser-included misdemeanor offense" described in Code § 18.2-186(A). On August 6, 1998, when the parties presented jury instructions, the trial court addressed arguments relating to the parties' proposed instruction describing the elements of the offense. Appellant submitted proposed Instruction G, and the Commonwealth's attorney proposed Instruction 1.

Instruction G informed the jury that, in order to convict appellant of violating Code § 18.2-186(B), the Commonwealth was required to prove that appellant made a false statement in writing knowing it was false, that the statement concerned her financial condition or ability to pay, that she procured delivery, credit or sale, that she did so with intent to defraud and that she failed to pay for the benefit so procured.

-

Instruction 1 included most of those elements and added that the value of the payment, loan credit or sale was $200 or more.

Appellant's attorney argued that he "tracked the exact statute" and he did not "see how that should be objectionable." The only objections made by defense counsel to the Commonwealth's Instruction 1 were the omission of the element that the defendant failed to pay and the inclusion of the heading from the Code describing the crime, namely, "that the Defendant was charged with the crime of making a false statement in writing to obtain property or credit." (Emphasis added.)

The trial court considered both instructions and found that "the Commonwealth's language is far more understandable." It then denied appellant's Instruction G and granted Commonwealth's Instruction 1 after adding the phrases "knowingly made a false statement" and "that she failed to pay for such loan, credit or benefit so procured." Neither appellant nor the Commonwealth requested or tendered a lesser-included offense instruction at trial. The jury found appellant guilty of violating Code § 18.2-186(B).

In a post-trial motion, appellant's new counsel argued for a new trial based on "the trial court's denial of [her] motion to strike and the court's refusal to instruct the jury on the elements of the lesser-included misdemeanor offense." The trial court recalled it "was never asked by either the Commonwealth or

the defense" to instruct on a lesser-included offense; instead, the only theories presented were that appellant be found "guilty of a felony or not guilty at all."  According to the trial court, "[t]hat was the trial tactic taken by the defense throughout."  Because the trial court "was never asked to instruct on the basis of a lesser-included offense," it ruled the request "comes too late at this time."  We agree.

Rule 5A:18, in pertinent part, provides as follows:

> No ruling of the trial court . . . will be
> considered as a basis for reversal unless
> the objection was stated together with the
> grounds therefor at the time of the ruling,
> except for good cause shown or to enable the
> Court of Appeals to attain the ends of
> justice.

"We are bound by the principle that the accused is entitled, on request, to have the jury instructed on a lesser included offense that is supported by more than a 'scintilla of evidence' in the record."  Bunn v. Commonwealth, 21 Va. App. 593, 599, 466 S.E.2d 744, 746 (1996) (emphasis added).  However, the failure to proffer an instruction prevents an appellate court from determining whether the trial court erred in failing to grant it.  See Pavlick v. Commonwealth, 27 Va. App. 219, 230, 497 S.E.2d 920, 925 (1998) (en banc) (citing Rule 5A:18).  But cf. Jimenez v. Commonwealth, 241 Va. 244, 245-46, 250, 402 S.E.2d 678, 678, 681 (1991) (holding that trial court has "affirmative duty properly to instruct a jury" on principles of law "vital" to case and that failure of accused to object does

-

not bar consideration of issue on appeal; jury instruction failed to include all requisite elements of crime and Commonwealth's evidence failed to prove omitted elements); Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992) (en banc) (holding that by tendering an instruction on lesser-included offense, defendant "fully alerted the trial judge and the Commonwealth" to his argument in favor of the lesser-included offense instruction in satisfaction of Rule 5A:18).

Appellant made a tactical decision not to request or proffer a lesser-included instruction in hopes that the jury would find that the Commonwealth failed to prove an element of the felony charge and acquit her.  Because the record fails to show that appellant requested or tendered an instruction on Code § 18.2-186(A) any time before the jury rendered its verdict, her post-conviction request was too late to be considered and is barred under Rule 5A:18.  Moreover, because the granted instruction properly included and explained all of the elements of Code § 18.2-186(B) and because there was sufficient evidence to sustain the conviction, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

## THE VOICE EXEMPLAR

The Fifth Amendment "offers no protection against compulsion . . . to write or speak for identification."

-

Schmerber v. California, 384 U.S. 757, 764 (1966).  When used as an identifying physical characteristic and not as a testimonial admission, voice exemplars compelled during a lineup do not violate the Fifth Amendment.  See United States v. Wade, 388 U.S. 218, 222-23 (1967); see also Pennsylvania v. Muniz, 496 U.S. 582, 592 (1990) (videotape portraying defendant's slurred speech after being arrested for drunk driving was not testimonial and, thus, was admissible); United States v. Dionisio, 410 U.S. 1, 5-7 (1972) (recorded voice exemplars compelled by a grand jury subpoena not testimonial).

Therefore, the trial court erred in finding that the voice exemplar was testimonial in nature requiring appellant to be subjected to cross-examination under oath.  However, an appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason.  See Driscoll v. Commonwealth, 14 Va. App. 449, 451-52, 417 S.E.2d 312, 313-14 (1992) (holding that "right result, wrong reason" rule may not be used if the correct reason for affirming the trial court was not raised in any manner at trial or if further factual resolution is needed before the right reason may be assigned in support).

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'"

-

<u>Crews v. Commonwealth</u>, 18 Va. App. 115, 118, 442 S.E.2d 407, 409 (1994) (citation omitted).

Although this Court has never addressed the admissibility of voice exemplars, case law from other jurisdictions is instructive.

In <u>United States v. Esdaille</u>, 769 F.2d 104, 105-06 (2d Cir. 1985), an undercover officer testified about a controlled drug purchase he made from the defendant. On cross-examination, the officer did not recall whether the person who sold him the drugs spoke with a distinctive accent. <u>See</u> <u>id.</u> at 106. "Esdaille then sought to introduce an exemplar of his voice by reading a portion of a newspaper article in order to prove that he in fact spoke with a heavy Caribbean accent." <u>Id.</u> The trial court

> refused to allow Esdaille to present the
> exemplar as nontestimonial evidence, on the
> grounds that the exemplar would have little
> probative value because it was inherently
> suspect, and that its probative value was
> outweighed by prejudice to the government in
> light of both the ease with which Esdaille
> could deliberately alter his accent and the
> inability of the government to test the
> reliability of the accented reading.

<u>Id.</u>

In <u>People v. Scarola</u>, 525 N.E.2d 728, 730 (N.Y. 1988), the New York Court of Appeals decided two cases in which the trial court denied the defendants' requests to present voice exemplars, without being subject to cross-examination, to show they had speech impediments. The victims testified in each case

-

that they heard and understood their respective assailants.  The court explained, "the fact that an exhibition of a physical characteristic is not testimonial in nature does not necessarily require its reception as evidence at trial."  Id. at 731. Rather, "[t]he test of whether voice exemplar evidence should be admitted . . . [is] whether it is relevant and reliable."  Id. at 732.  The court initially noted that "voice exemplar evidence by its very nature is different from other common types of exemplar evidence."  Id. (citing cases involving scars and tattoos, explaining requirement that defendant demonstrate that scar or tattoo predated crime).  "In contrast, voice exemplar evidence, as the trial courts in these cases recognized, is relatively easy to feign."  Id.  The court "conclude[d] that the trial courts did not abuse their discretion" because the victims did not rely on the defendant's voice to recognize him and "the foundation for the admission of the evidence, in each case did not rule out the possibility that the defendants could feign the existence of a speech defect."  Id. at 733; see also Newman v. Hopkins, 192 F.3d 1132 (8th Cir. 1999) (even if appellate court finds that defendant is entitled to offer a voice exemplar without waiving privilege against self-incrimination, he is still required to establish its reliability); State v. Watson, 707 A.2d 1278 (Conn. Ct. App. 1998) (denying the entry into evidence of proof of plaintiff's Boston accent because such

-

evidence could be easily faked and others had testified to it), aff'd, 740 A.2d 832 (Conn. 1999).

We find that the trial court reached the correct result, but for the wrong reason. Before the trial court erroneously held that the voice exemplar was testimonial and could not be admitted without cross-examination, the Commonwealth's attorney commented on the unreliability of such an exemplar, noting that it is easy to feign an accent. We agree with that argument and find no evidence in the record that establishes the reliability of the voice exemplar appellant sought to introduce. Cf. Esdaille, 769 F.2d at 106 (noting that defendant presented testimony from schoolmate about his accent).

Here, appellant sought to introduce a voice exemplar to the jury to prove that she was the victim of a false identification. However, appellant's voice identification was not the central issue, and a great amount of evidence identified appellant as the guilty party. Utuk spent several hours in a face-to-face encounter with appellant and positively identified her at trial. Moreover, appellant's photograph was on the photocopied identification card that appellant presented to Utuk. Utuk relied on the photograph when he negotiated with her and when he made the sale. Holloway relied on the photocopied identification when he located and arrested appellant at the address used on the false identification. Moreover, when confronted by Holloway, appellant attempted to flee from

-

Holloway when he first confronted her.  See Langhorne v. Commonwealth, 13 Va. App. 97, 102, 409 S.E.2d 476, 480 (1991) (holding that flight may be considered as a factor in determining guilt).  After her arrest, appellant admitted having knowledge about the car.  Finally, the jury had the photocopied identification to consider and view as a trial exhibit.

Because the trial court reached the right result for the wrong reason and because appellant's identity did not rest solely on her accent but on a large amount of other credible evidence, the trial court did not abuse its discretion in excluding the voice exemplar.

For the foregoing reasons, appellant's conviction is affirmed.

Affirmed.

-