COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Agee and Kelsey
Argued at Salem, Virginia


KEVIN EUGENE BROWN

                                        MEMORANDUM OPINION* BY
v.    Record No. 3458-01-3            JUDGE D. ARTHUR KELSEY
                                           JANUARY 21, 2003
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                      Richard S. Miller, Judge

          Gregory W. Smith for appellant.

          Donald E. Jeffrey, III, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     On appeal, Kevin Eugene Brown challenges his conviction for

distribution of cocaine in violation of Code § 18.2-248.  He

claims that the Commonwealth failed to present sufficient evidence

to demonstrate his guilt beyond a reasonable doubt.  Finding the

evidence sufficient to support his conviction, we affirm the trial

court.

                                I.

     On appeal, we review the evidence "'in the light most

favorable to the Commonwealth'" and grant it the benefit of any

reasonable inferences.  Ward v. Commonwealth, 264 Va. 648, 654,

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

570 S.E.2d 827, 831 (2002) (quoting Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)).  That principle requires us to "'discard the evidence of the accused'" which conflicts, either directly or inferentially, with the Commonwealth's evidence.  Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).

On the evening of June 22, 2000, Investigator Russell Davidson of the Lynchburg Police Department conducted surveillance of an "open air drug market" in Lynchburg.  Positioned less than one block away from the area where drugs were routinely sold, Davidson used binoculars to witness the appellant, Kevin Eugene Brown, engage in what appeared to be four separate drug transactions.

The first transaction occurred at 6:38 p.m. when Brown approached a taxicab and conversed briefly with a passenger. Brown handed the passenger an object and, in return, the passenger handed Brown money.  Brown then handed the money to an individual standing beside him, a common practice among drug dealers.  The taxi then left the area.  Eight minutes later, Davidson observed Donna Blankenship, a woman Davidson knew, approach Brown.  Brown and Blankenship exchanged "unidentified" items.  About twenty-five minutes later, Brown walked up to a pickup truck and talked briefly with an individual inside.  Brown and the individual

-

quickly exchanged items, but the transaction occurred so fast that Davidson "couldn't see what was passed." The truck quickly drove away and Brown "left the area for a short time."

Brown returned to the scene forty-five minutes later and "approached a red Chevrolet pickup that was being operated by a black male." The driver exited the truck and walked with Brown to the "tailgate section of the truck." There, the two men talked briefly. Davidson then observed Brown remove an "off white substance" from his mouth that was wrapped in a clear "plastic baggie." Brown placed the item "in the bed of the truck." He then removed a second, identical item from his mouth, placed it in the same place on the truck, and walked away. The driver reached into the "same vicinity that Mr. Brown had laid the suspected cocaine down," picked an item up, then "got in the truck and left the area." The entire transaction took "less than a minute."

Knowing that distributors of cocaine commonly wrap crack cocaine in plastic and conceal the drugs in their mouths, Davidson immediately notified other members of the narcotics strike force of his observations. He described Brown in detail to the other officers and informed them that he had probable cause to arrest Brown for distribution of cocaine. Davidson also described the red Chevrolet pickup truck, noting its license plate number: YMY-2992.

Officer R.E. Cook of the Lynchburg Police Department received Davidson's call about Brown and arrived at the "open air drug market" within seconds of receiving the call. Being "familiar with Mr. Brown" because of having "dealt with him on numerous occasions in the past," Cook immediately recognized Brown at the scene. Cook exited his car, identified himself as a police officer, and "began to approach" Brown. As Cook drew closer to Brown, he called Brown by name and, without providing further details, told Brown that he "needed to speak to him for a second." Brown dropped some food he was eating and "took off running." Cook chased Brown for approximately two blocks over fences and through several backyards before apprehending him.

Meanwhile, Davidson's call about the red pickup truck alerted Officer Ryan Zuidema of the Lynchburg Police Department that the truck was headed in his direction. About thirty to forty-five seconds after receiving the message, the red pickup truck came into Zuidema's line of sight. After verifying the description of the vehicle and the license plate number, Zuidema stopped the truck. Zuidema identified the driver as James D. Cashwell and searched the truck. "Underneath the floor mat" in the truck, Zuidema found "two plastic bag corners with an off-white rock-like material." Zuidema arrested Cashwell for possession of cocaine and collected the drugs. Zuidema submitted the drugs for analysis to the Virginia Division of

-

Forensic Science, which later issued a certificate of analysis identifying the substance as cocaine.

At trial, Brown moved to strike the evidence claiming that the Commonwealth failed to present sufficient evidence of his guilt beyond a reasonable doubt.  The trial court disagreed, overruled the motion, and found Brown guilty of distribution of cocaine in violation of Code § 18.2-248.  The court sentenced Brown to five years in prison and imposed a $500 fine, suspending two years and seven months of the sentence.

## II.

Due process requires the prosecution to prove the defendant's guilt "beyond a reasonable doubt."  Fiore v. White, 531 U.S. 225, 228-29 (2001).  This essential safeguard of liberty, as stringent as it is, does not ignore the axiom that "'[e]vidence is seldom sufficient to establish any fact as demonstrated and beyond all doubt.'"  Harris v. Commonwealth, 206 Va. 882, 887, 147 S.E.2d 88, 92 (1966) (quoting Toler v. Commonwealth, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949)).  Even so, mere suspicion of wrongdoing coupled with a bare probability of guilt can never suffice.

When faced with a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it."  Davis v.

-

Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (citations omitted); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc).  Under that standard, we cannot "substitute our judgment for that of the trier of fact, even were our opinion to differ."  Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (citation omitted); see also Harris v. Commonwealth, 38 Va. App. 680, 691, 568 S.E.2d 385, 390 (2002).  In other words, a reviewing court does not

> ask itself whether it believes that the
> evidence at the trial established guilt
> beyond a reasonable doubt.  Instead, the
> relevant question is whether, after viewing
> the evidence in the light most favorable to
> the prosecution, any rational trier of fact
> could have found the essential elements of
> the crime beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original and citation omitted).[1]  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and

---

[1] When a jury decides the case, "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make.  We let the decision stand unless we conclude no rational juror could have reached that decision."  Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, ___ (2002) (en banc).  The same standard applies when a trial judge sits as the fact finder.  "If reasonable jurists could disagree about the probative force of the facts, we have no authority to substitute our views for those of the trial judge."  Campbell v. Commonwealth, 39 Va. App. 180, 186, 571 S.E.2d 906, 909 (2002).

-

to draw reasonable inferences from basic facts to ultimate facts."  Id.

### III.

An individual is guilty of possession of a controlled substance with the intent to distribute when he possesses "the controlled substance contemporaneously with his intention to distribute that substance."  Christian v. Commonwealth, 33 Va. App. 704, 716, 536 S.E.2d 477, 483 (2000) (citation omitted).  Because of the difficulty proving intent directly, the Commonwealth may (and often must) rely instead on circumstantial evidence.  Morrison v. Commonwealth, 37 Va. App. 273, 281, 557 S.E.2d 724, 728 (2002).

Viewed in the light most favorable to the Commonwealth, Brown's actions on the night of his arrest provide ample evidence that he transacted several drug sales on the night in question.  Brown was present in an "open air drug market" engaging in several hand-to-hand transactions having all the observable characteristics of drug sales.  See, e.g., Kidd v. Commonwealth, 38 Va. App. 433, 448-49, 565 S.E.2d 337, 344-45 (2002) ("hand-to-hand" transactions in area known for drug activity illustrative of drug distribution).  Brown removed an off-white substance wrapped in plastic from his mouth, which Cashwell retrieved.  See Royal v. Commonwealth, 37 Va. App. 360, 369, 558 S.E.2d 549, 553 (2002) (recognizing that drug dealers

-

routinely conceal crack cocaine in their mouths). Brown's

transaction with Cashwell took "less than a minute," a period of

time Officer Davidson testified to be consistent with the timing

for a "street level" drug sale.

Immediately following his encounter with Cashwell, Brown

ran from Officer Cook even before the officer announced the

reason for his approach. "Flight by a defendant after the

commission of a crime is probative evidence of guilt of that

crime." Lovitt v. Commonwealth, 260 Va. 497, 512, 537 S.E.2d

866, 876 (2000).[2] Meanwhile, Officer Zuidema stopped Cashwell's

red pickup truck and recovered cocaine that Cashwell admitted he

purchased "off the street" that day in Lynchburg. Based on

these findings, the trial court correctly found the connection

between Brown and Cashwell's cocaine to be "circumstantially

reliable."

---

[2] See also Clagett v. Commonwealth, 252 Va. 79, 93, 472
S.E.2d 263, 271 (1996); Marsh v. Commonwealth, 32 Va. App. 669,
683, 530 S.E.2d 425, 432 (2000); Harter v. Commonwealth, 31
Va. App. 743, 748, 525 S.E.2d 606, 608 (2000); Burke v.
Commonwealth, 30 Va. App. 89, 93, 515 S.E.2d 777, 780 (1999);
Langhorne v. Commonwealth, 13 Va. App. 97, 102, 409 S.E.2d 476,
479-80 (1991); Hope v. Commonwealth, 10 Va. App. 381, 386, 392
S.E.2d 830, 833-34 (1990) (en banc).

IV.

Sufficient evidence supports Brown's conviction for distribution of cocaine.  The trial court, therefore, did not plainly err in convicting Brown for this offense.

<u>Affirmed</u>.