COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Alston and Senior Judge Coleman
Argued at Richmond, Virginia


DEJON T. PERSON

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0456-11-2                      JUDGE ROSSIE D. ALSTON, JR.
                                                    JUNE 5, 2012
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                          Frederick G. Rockwell, III, Judge

           Alexander L. Taylor, Jr. (Law Office of Alex Taylor, on briefs),
           for appellant.

           Susan M. Harris, Assistant Attorney General (Kenneth T.
           Cuccinelli, II, Attorney General, on brief), for appellee.


       Dejon T. Person ("appellant") appeals his convictions for first-degree murder, robbery,

malicious wounding, and three corresponding counts of using a firearm in the commission of

each felony offense. Appellant contends that the trial court erred in three respects:  1) the trial

court erred in denying his motion to set aside the verdict after the Commonwealth committed a

Brady violation; 2) the trial court erred in denying his motion to strike when the Commonwealth

failed to prove that he took personal property as an element of robbery; and 3) the trial court

erred in failing to instruct the jury on unlawful wounding. For the reasons that follow, we affirm

in part and reverse in part. We affirm the trial court's decisions on the first two assignments of

error but find that the trial court erred in failing to instruct the jury on unlawful wounding and

consequently remand for a new trial on the malicious wounding and use of a firearm in the

commission of a malicious wounding charges only, if the Commonwealth be so advised.

---

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

When considering the sufficiency of the evidence following a jury verdict, we must determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We will not set aside the trial court's judgment "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680.

Viewing the evidence in the light most favorable to the Commonwealth, the evidence indicated that appellant's cousin, Gary Harrison, called an acquaintance, Robert Cooks, on April 21, 2010, to arrange a marijuana purchase. Harrison was one of Robert's regular customers, and Harrison requested that Robert arrange this purchase with his dealing partner, Clifford Cox. Harrison told Robert that he wanted to purchase an ounce of "Exotic" – a high grade of marijuana – and a quarter pound of regular grade marijuana. Harrison and Robert agreed to meet at an apartment complex near Robert's residence. Both Harrison and Robert understood that Robert would ride with Clifford and that Harrison would probably bring his girlfriend, Tyjiah Clayton. Harrison never mentioned that he would bring his cousin, appellant, and neither Robert nor Clifford had ever met appellant before that day.

When Robert and Clifford arrived at the meeting point, Harrison was already there waiting in his car. Robert later gave conflicting testimony at trial regarding whether he saw anyone sitting in the passenger seat of Harrison's car. He stated on direct examination that he

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

saw no one when he first approached the meeting point but then affirmed on direct examination that he had previously testified to seeing Harrison's girlfriend in the passenger seat. After both Clifford and Harrison parked their cars, Robert noticed appellant sitting in the backseat of Harrison's car, behind Harrison, wearing a black baseball cap. Harrison then exited his car and got into the backseat of Clifford's car, behind Robert. With a digital scale, Clifford weighed the high grade marijuana so Harrison could see that it weighed an ounce. After weighing it, Clifford put the marijuana back into a tall, orange pill bottle.

Harrison then announced that appellant wanted to see for himself that the marijuana weighed an ounce. Harrison exited Clifford's car and returned to his, and appellant took Harrison's place behind Robert in the backseat. Clifford began to re-weigh the marijuana from the pill bottle. Before Clifford finished, appellant pulled a gun from his pants, pointed it at Clifford, and said, "Do you have money, too?" Robert was unarmed, but swatted at appellant's gun, a .9 millimeter Sig Sauer. The two struggled until appellant started shooting, and a shot struck Robert in the hand that he was using to try to push appellant's gun away. At that point, Robert got out of Clifford's car and tried to push the backseat door closed to stop appellant from getting out.

Robert ran from the car toward the nearby woods. When he reached the woods, he noticed that he had a gunshot wound in his thigh. However, he could not recollect when he received that wound, nor did he remember hearing any gunshots as he was running toward the woods. A few minutes later, a Chesterfield County police officer intercepted Robert.

In the meantime, Chesterfield County Police Officer Michael Lasorsa was dispatched to the apartment complex for a "shooting call." When he pulled into the parking lot, Officer Lasorsa heard several residents yelling that the shooter was in the area and still shooting. Officer Lasorsa parked his patrol car, blocking the entrance to the parking lot, and discovered a

- 3 -

nineteen-year-old black male, Clifford, sitting in the driver's seat of a green Infinity. His head was tilted back, and he was still. Because Officer Lasorsa could not detect a pulse anywhere on Clifford, he concluded that Clifford was dead and covered his body with a sheet. The medical examiner later determined that Clifford had been shot eight times.

A forensics investigator recovered seven .9 millimeter Lugar caliber cartridge casings outside and around Clifford's car and seven more inside the car. Although the police never recovered the gun that appellant eventually admitted to using, they did determine that all fourteen shell casings were from bullets fired from that gun. The police did, however, recover a black revolver from the backseat of the car, stuffed in between the seats. Through additional investigation and analysis, police later determined that the revolver belonged to Clifford.

Using cell phone records obtained from Robert, police identified Harrison as a suspect in the shooting. Police arrested Harrison in the City of Richmond a few days later. Almost two weeks later, U.S. Marshals found appellant in Pennsylvania and arrested him on multiple charges.

Two months prior to his trial, appellant filed a motion for discovery with the trial court. The Commonwealth filed a response to the discovery motion with an attached "summary of all known exculpatory materials." This summary included in pertinent part:

> Robert Cooks: Mr. Cooks has not been charged with any crime. That was decided the day of the shooting. Mr. Cooks is a juvenile and has no felony convictions or misdemeanor convictions. On June 7, 2010, it was learned that he has a pending Grand Larceny case under advisement until his 18th birthday at which time it will be dismissed if he has no new charges or problems. Mr. Cooks stated that [Clifford] had a gun on his lap at the time of the drug deal but he never saw him pick it up or fire it.

> \*        \*        \*        \*        \*        \*        \*

- 4 -

> Witnesses at the scene said there was a front seat passenger in Mr. Harrison's car. Mr. Harrison denied this to the police.

A grand jury indicted appellant for first-degree murder in violation of Code § 18.2-32 relating to Clifford's death, malicious wounding in violation of Code § 18.2-51 relating to the shooting of Robert, robbery in violation of Code § 18.2-58, and three corresponding counts of using a firearm in commission of murder, malicious wounding, and robbery in violation of Code § 18.2-53.1.

Appellant was tried before a jury over the course of two days. Robert testified for the Commonwealth consistently with the events as described above. Although Robert admitted he had a pending charge of grand larceny "under advisement" in the juvenile district court, he testified that neither the prosecutor nor the police had promised favorable treatment in exchange for his testimony. On cross-examination, Robert conceded that appellant did not take the marijuana from his hands or from Clifford's hands. Robert also admitted that appellant did not take any money or other property that was in Clifford's car. He further testified that Clifford had a gun sitting on his left thigh while the transaction was taking place in Clifford's car. After cross-examination exposed Robert's prior inconsistent statements about when and how he was shot in the leg, Robert admitted that he understood only from experts that the gunshot to his thigh entered from the front, not from the back as he had previously stated.

Detective Michael Morgott then testified about the Chesterfield County Police Department's investigation of the shooting as described above. In addition, Detective Morgott testified that he was told there was a third person in the car with Harrison and appellant but that no one in the police department was able to prove that this person was Harrison's girlfriend, Tyjiah Clayton. On re-direct, Detective Morgott confirmed that he had interviewed Ms. Clayton and that she maintained, as Harrison did, that she was not in the car on the day of the incident.

Forensic investigator Amy Knight testified in detail about the physical evidence from the crime scene. Investigator Knight testified that Clifford's black revolver contained one empty cartridge casing and five bullets in its chamber, but that the police never recovered any shell casings from the revolver's bullets. Consequently, although the revolver fired once, the police were unable to verify that Clifford or anyone else fired the revolver while in the car or at any time surrounding the altercation that led to Clifford's death. Additionally, Investigator Knight testified that police recovered only approximately 5.3 grams, or .17 ounce, of marijuana from the crime scene.

At the conclusion of the Commonwealth's case-in-chief, appellant made a motion to strike. Because the Commonwealth based its charge of first-degree murder on a theory of felony murder premised on a robbery, appellant contended that the Commonwealth had failed to prove that he took something from Robert or Clifford. Appellant made the same argument with respect to the use of a firearm in commission of a robbery charge. Regarding malicious wounding, appellant argued that he was clearly in imminent danger of death when he was in Clifford's car because there was a weapon in the car and that the evidence indicated it was fired; therefore, according to appellant, he did not act with malice. After allowing the Commonwealth to argue in response, the trial court denied the motion, noting that Robert may not have known whether anything was taken at the time he jumped out of the car and started running. The trial court also disagreed with appellant's argument pertaining to the malicious wounding charge, stating that there was no evidence that Clifford's weapon was pointed at appellant or fired while appellant was in the car.

During appellant's case-in-chief, appellant testified on his own behalf. Appellant stated that he went with his cousin, Harrison, to the apartment complex to purchase marijuana, carrying a gun and a little less than $900. Appellant described how Harrison first got into the car with

Robert and Clifford. After Harrison got out of the car, appellant testified that he got into the other car in the back behind the passenger's seat.

According to appellant, Clifford re-weighed the marijuana in front of appellant and handed appellant the pill bottle with the marijuana in it. Appellant stated that he had started to count his money to pay Robert when he looked up and saw Clifford pointing a gun at him. Specifically, appellant testified: "And from there I jumped back. I heard the shot. I reached for my gun at the same time. I heard a shot. I just ducked and started shooting." Appellant described how Robert grabbed his right hand (holding the gun) and was trying to push it away while appellant continued to shoot. Appellant stated that he feared for his life and eventually exited the car, shot one time, and ran.

On cross-examination, appellant admitted that although he was carrying a handgun, he understood that it was illegal for him to do so because he is a convicted felon. Appellant conceded that he had loaded the gun with seventeen rounds before getting into Harrison's car. Appellant also admitted that following the shooting, he still had some of the marijuana in his pocket along with the pill bottle that Clifford had put the marijuana in after re-weighing it.

Appellant did not call any other witnesses and renewed his motion to strike, reiterating his argument that there was no evidence of a robbery because the marijuana was already in his possession before anyone started shooting, regardless of who shot first. Appellant also argued that there was no evidence of malice supporting the malicious wounding charge because each time he shot the gun at Robert he was shooting in self-defense. The trial court overruled the motion, finding that the verdict would rest on credibility determinations that the jury would make.

The trial court then instructed the jury on self-defense, reasonable provocation, the difference between murder and manslaughter, the malice inference from an unlawful killing, the

malice inference from the use of a firearm, and malicious wounding, among other charges, but refused to instruct the jury on unlawful wounding. The following exchange took place between the court and counsel regarding the unlawful wounding instruction:

> [Commonwealth's attorney]: There was one [jury instruction], it wasn't prepared. He [appellant's counsel] wanted it added that's why you can't find it.
>
> THE COURT: [Appellant's counsel], you've asked that the malicious wounding, that the Court also instruct the jury of unlawful wounding, correct?
>
> [Appellant's counsel]: That is right.
>
> THE COURT: And the Court based on the fact that there were actually two gunshots, one to the hand and one to the leg, the Court declines to find that the unlawful wounding instruction is appropriate. If it had been the shooting to the hand but arguing the shooting of the leg in the circumstances described by both the victim and your client do not warrant the offering of unlawful wounding. So I will deny that request and note your exception.

After deliberating, the jury convicted appellant on all counts – first-degree murder in violation of Code § 18.2-32 as to Clifford, malicious wounding in violation of Code § 18.2-51 as to Robert, robbery in violation of Code § 18.2-58, and three corresponding counts of using a firearm in the commission of murder, malicious wounding, and robbery in violation of Code § 18.2-53.1.

The trial court later sentenced appellant to a total of fifty-eight years' imprisonment. This appeal followed.

ANALYSIS

A. Brady Violation

Appellant assigns error to the trial court's denial of his motion to set aside the verdict based on his claim that the Commonwealth suppressed evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). In support of this assignment of error, appellant contends that the

- 8 -

Commonwealth improperly withheld information it had obtained from Tyjiah Clayton about her presence in the passenger seat of Harrison's car on the day of the shooting because it could have assisted appellant in impeaching Robert during trial.

When reviewing a trial court's determination regarding an alleged Brady violation, an appellate court reviews the trial court's factual findings for clear error and the legal conclusions *de novo*. Walker v. Kelly, 589 F.3d 127, 140 (4th Cir. 2009); see also Garnett v. Commonwealth, 275 Va. 397, 657 S.E.2d 100 (2008) (reviewing legal claims *de novo*). When an exculpatory evidence claim is reviewed "the burden is on appellant to show that the trial court erred." Galbraith v. Commonwealth, 18 Va. App. 734, 739, 446 S.E.2d 633, 637 (1994). If an appellant meets this burden, an appellate court "do[es] not engage in a harmless error review. Instead, a 'constitutional error occurs, and the conviction must be reversed . . . if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.'" Teleguz v. Commonwealth, 273 Va. 458, 488, 643 S.E.2d 708, 727 (2007) (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)) (citations omitted).

We have previously stated:

> "A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused." Youngblood v. West Virginia, 126 S. Ct. 2188, 2190, 165 L. Ed. 2d 269 (2006). "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). The Commonwealth's duty to disclose exculpatory information includes evidence that can be used to impeach prosecution witnesses. United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985); Youngblood, 126 S. Ct. at 2190; Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986) ("The impeachment value alone makes the information exculpatory.").

Garnett v. Commonwealth, 49 Va. App. 524, 529-30, 642 S.E.2d 782, 785 (2007). Exculpatory "information known to the police is information within the Commonwealth's knowledge and the prosecutor is obliged to disclose regardless of the state of his actual knowledge." Moreno v. Commonwealth, 10 Va. App. 408, 418, 392 S.E.2d 836, 842-43 (1990). "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Workman v. Commonwealth, 272 Va. 633, 644, 636 S.E.2d 368, 374 (2006) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). Additionally, "if a Brady violation is established, we do not engage in a harmless error review. Instead, a 'constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.' United States v. Bagley, 473 U.S. 667, 678 (1985)." Teleguz, 273 Va. at 488, 643 S.E.2d at 727.

Assuming without deciding that appellant has met his burden to demonstrate that the evidence was favorable and inappropriately withheld, the record herein independently supports confidence in the jury's verdict. We have this confidence because appellant not only had the opportunity to cross-examine the Commonwealth's witnesses about the suppressed information, but vigorously and effectively cross-examined Robert extensively, exposing Robert's prior inconsistent statements about the gunshot wound to his thigh. Appellant's skillful cross-examination also forced Robert to admit that he had a grand larceny charge pending in the juvenile district court. These salient facts being squarely before the fact-finder, it is clear that the jury had a choice between two competing versions of what occurred in the car when deciding whether to convict appellant of the charged offenses. Moreover, the Commonwealth presented physical evidence that supported Robert's version of the events in contradiction to appellant's version. We find that any further impeachment of Robert that appellant could have achieved

- 10 -

with the information about Ms. Clayton does not undermine confidence in the verdict. Accordingly, we find that assuming a Brady violation did occur, the trial court did not err in denying appellant's motion to set aside the verdict because the undisclosed evidence was not material in undermining the confidence of the trial's outcome.

### B.  Sufficiency of the Evidence

Appellant contends that the trial court erred in denying his motion to strike the evidence because the Commonwealth failed to introduce sufficient evidence to prove that appellant took personal property from Robert or Clifford.  Thus, according to appellant, he could not be convicted of the robbery, use of a firearm in commission of the robbery, or first-degree murder because the murder was premised on a theory of felony murder.  When reviewing a challenge to the sufficiency of the evidence supporting a jury verdict, we must determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Maxwell, 275 Va. at  442, 657 S.E.2d at 502 (quoting Jackson, 443 U.S. at 319).  Additionally, we will not set aside a judgment "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it."  Code § 8.01-680.

Consistent with the common law and Code § 18.2-58, the trial court instructed the jury that the Commonwealth needed to prove beyond a reasonable doubt that personal property was taken, and a firearm was used to accomplish that taking, among other elements, to convict appellant of using a firearm in the commission of a robbery.  See Williams v. Commonwealth, 278 Va. 633, 637, 685 S.E.2d 178, 180 (2009).

Viewing the evidence in the light most favorable to the Commonwealth and granting it all reasonable inferences, we find that the record contains ample evidence demonstrating that appellant took marijuana from Clifford's car on the day of the shooting.  Robert testified that

Clifford weighed out one ounce of marijuana both when Harrison was in the car and then again when appellant was in the car and observing the weighing. Investigator Knight testified that the police only recovered .17 ounce, or less than two-tenths of an ounce of marijuana from the crime scene. Moreover, appellant admitted that he took the pill bottle that contained the marijuana and still had some of the marijuana in his pocket when he fled the scene in Harrison's car. Accordingly, we find that the trial court did not err in finding that the Commonwealth demonstrated sufficient evidence to support the charges of robbery, use of a firearm in commission of a robbery, and first-degree murder.

### C. Jury Instruction on Unlawful Wounding

In appellant's final assignment of error, he contends that the trial court erred in failing to instruct the jury on unlawful wounding as it related to the shooting of Robert. Because we agree, we reverse and remand on the malicious wounding and use of a firearm in commission of a malicious wounding charges, if the Commonwealth be so advised.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). On appeal, this Court reviews the trial court's "broad discretion in giving or denying instructions requested" for an abuse of that discretion. Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*). "Although the Commonwealth prevailed at trial, the appropriate standard of review requires that [the appellate court] view the evidence with respect to the refused instruction in the light most favorable to the defendant." Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992). Viewing the evidence in that light, "the accused is entitled, on request, to have the jury instructed on a lesser included offense that is supported by

- 12 -

more than a 'scintilla of evidence' in the record." Bunn v. Commonwealth, 21 Va. App. 593, 599, 466 S.E.2d 744, 746 (1996) (quoting Brandau v. Commonwealth, 16 Va. App. 408, 411, 430 S.E.2d 563, 564 (1993)).

We find ourselves bound by our decision in Miller v. Commonwealth, 5 Va. App. 22, 359 S.E.2d 841 (1987). In Miller, the victim and Miller got into a verbal altercation over a drug deal while in a convenience store. Id. at 23, 359 S.E.2d at 841. After a security guard broke up the fight, the victim went to talk to a friend in the parking lot while Miller approached a crowd of people across the street. Id. at 23, 359 S.E.2d at 842. Miller obtained a gun from a member of the crowd, along with instructions on how to fire the gun. Id. at 24, 359 S.E.2d at 842. Despite the attempts of several people in the crowd to restrain Miller, he walked toward the victim and fired two shots. Id. During his trial for malicious wounding, Miller admitted that he shot the victim out of anger and revenge. Id. The trial court refused to instruct the jury on unlawful wounding as Miller requested. Id.

On appeal, we reversed, holding: "Where a defendant produces evidence that he acted in the heat of passion, he is entitled to an instruction on the lesser offense of unlawful wounding." Id. at 25, 359 S.E.2d at 842. We explained that "[h]eat of passion may result when one is provoked to fear or rage or both." Id. (citing McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 292 (1975)). From this analytical framework, this Court concluded that a jury could have determined that Miller acted in the heat of passion in shooting the victim based on the evidence, thereby negating malice for the malicious wounding charge. Id. at 26, 359 S.E.2d at 843.

Like the dispute over a drug deal in Miller, the dispute herein arose related to a drug purchase between appellant, Clifford, and Robert. Similar to the circumstances in Miller, with just a few minutes elapsing between a fight and a shooting, Clifford shot at appellant with a gun,

- 13 -

provoking him to fear for his life. Robert tried to wrestle appellant's gun away from him, further provoking him, and appellant ducked behind the seat and started shooting. However, unlike the evidence of a break between the fight and the shooting in Miller, no break occurred between the provocation and the shooting in the case at bar.

In denying appellant's requested instruction, the trial court stated: "And the Court based on the fact that there were actually two gunshots, one to the hand and one to the leg, the Court declines to find that the unlawful wounding instruction is appropriate." The trial court's conclusion that the two shots that appellant fired precluded giving the unlawful wounding instruction misapplies the legal standard. See Miller, 5 Va. App. at 26, 359 S.E.2d at 843 ("Miller fired two shots; one missed and one struck the victim's side. A jury could find from the evidence that Miller did not act maliciously, but acted upon a reasonable provocation, in the heat of passion."). As we reiterated in Miller, "'if there is evidence tending to support the lesser offense, a trial court errs in refusing an instruction thereon.'" Id. (quoting Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986) (citations omitted)). As noted above, viewed in the light most favorable to appellant, more than a scintilla of evidence in the case at bar supported appellant's theory that he pulled out his gun and shot only after Clifford first shot at him. Thus, appellant was entitled to the instruction on unlawful wounding as it relates to the shooting of Robert.[2]

The Commonwealth argues that our decision in Marsh v. Commonwealth, 32 Va. App. 669, 530 S.E.2d 425 (2000), precludes us from considering this issue on the merits because appellant failed to proffer a *written* instruction on unlawful wounding despite the record's

---

[2] It is noted that the malice inquiry associated with the death of Clifford and that first-degree murder conviction does not necessarily transfer to the inquiry regarding the appropriateness of an unlawful wounding instruction in the shooting of Robert.

- 14 -

indication that he *verbally* requested one.[3] However, in Marsh, it was recognized that the defendant therein made a "tactical decision not to *request or proffer* a lesser-included instruction in hopes that the jury would find that the Commonwealth failed to prove an element of the felony charge and acquit her." Id. at 680, 530 S.E.2d at 431 (emphasis added). We held that "[b]ecause the record fails to show that appellant requested or tendered an instruction on [the lesser-included offense] any time before the jury rendered its verdict, her post-conviction request was too late to be considered and is barred under Rule 5A:18." Id.

We find that Marsh is inapposite to this case. Marsh applied Rule 5A:18 and its corresponding policy to preclude appellate review of an argument that the trial court never had an opportunity to rule upon when the defendant failed to raise the issue at the appropriate time during trial. In this case, the record indicates that the trial court unmistakably understood appellant's request for an instruction on unlawful wounding, denied the request, and noted appellant's exception to the ruling. Although the record does not contain the written instruction that appellant requested, we must presume that the trial court knows the law, Henderson v. Commonwealth, 58 Va. App. 363, 376, 710 S.E.2d 482, 489 (2011), and, that in this case, the trial court did not reject the instruction because it misstated the law. Granting that we prefer a proffered written instruction to appear in the record, neither Rule 5A:18 nor our decision in Marsh precludes our consideration of this issue. Consequently, we find that the trial court erred in failing to instruct the jury on unlawful wounding. Considering that error, we must also reverse appellant's conviction for use of a firearm in the commission of a malicious wounding.

---

[3] Appellant asserted at oral arguments that he did proffer a written instruction, but it does not appear in the record.

- 15 -

CONCLUSION

Accordingly, we affirm the trial court's denial of appellant's motion to set aside the verdict and motion to strike.  But we reverse the trial court's refusal to instruct the jury on unlawful wounding and remand for a new trial on the charges of malicious wounding and use of a firearm in the commission of a malicious wounding should the Commonwealth be inclined.

<u>Affirmed in part,</u>
<u>reversed and</u>
<u>remanded in part.</u>