351 So.2d 1153 (1977)
STATE of Louisiana
v.
Lindy TILLETT.
No. 59550.
Supreme Court of Louisiana.
October 10, 1977.
Elizabeth W. Cole, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
On January 16, 1975 in the early afternoon, a man entered Brotherhood Grocery in New Orleans. He wore a handkerchief tied around his mouth and carried a sawed-off shotgun partially wrapped in a handkerchief. He demanded to be given money from a cigar box in which about one hundred dollars had been hidden. The store owner, Mrs. Camile Jackson, gave him the *1154 money. The robber forced Mrs. Jackson and her elderly uncle who also worked in the store to lie on the floor. The robber fled.
Mrs. Jackson reported the crime to police and described the robber as a light-complexioned black male about eighteen or twenty years old and about five feet eight or nine inches tall. She identified the man who robbed her from a group of photographs and the man, whose name was James Cook (or Cooke), was arrested. Thereafter the arrestee's mother came to Mrs. Jackson's store and told her that the store owner mistakenly identified James Cook. Mrs. Cook suggested to her that a man named Lindy Tillett (defendant herein), whom Mrs. Jackson did not know, might have been the robber. Subsequently, Mrs. Jackson's son told her that the description she had given police fit a person named Lindy Tillett with whom he played pool. Mrs. Jackson then informed police that a person named Lindy Tillett might be the person who held her up.
Defendant Tillett was arrested and Mrs. Jackson and her uncle were asked to come to a lineup in which he would be standing. Although they knew Tillett would be in the lineup, neither victim knew Tillett and neither had been shown any pictures of him. Before the lineup defendant Tillett, with the assistance of counsel, chose his own position and selected the man he chose to stand beside. All of the men were dressed exactly alike in overalls and all were barefooted. The men were of approximately the same height, build and skin color as the suspect. Both Mrs. Jackson and her uncle, who were seated apart, independently identified Tillett as their assailant.
Defendant Tillett was charged with the armed robbery and was tried by jury. At trial, the state's case was based solely on the identification of the Jacksons and the testimony of one other witness, who had seen a man she identified as defendant sitting near the store before the crime. Defendant had asked her who was working at the Brotherhood Grocery.
After hearing this evidence, the jury convicted defendant Tillett and he was sentenced as a multiple offender to spend thirty-three and one-third years at hard labor. [1] He now appeals on the basis of three argued assignments of error.[2] Because we reverse Tillett's conviction on the basis of error numbers four and five, we first discuss those assignments.

ASSIGNMENTS OF ERROR NOS. 4 AND 5
Defendant Tillett argues that the trial court erred in failing to allow him to demonstrate that he did not have a Spanish accent, and in failing to grant his motion for new trial on the same basis.
The alleged error arose in the following manner. At trial, Mr. Bither Jackson, Mrs. Jackson's seventy-four year old uncle who was present in the store when it was robbed, testified on cross-examination as follows:
"Q. You said you are positive that Mr. Tillet is the man that held you up. Why do you remember him so well?
A. I remember. I remember you. If I see you one time I remember you.
Q. How do you remember him? What is there particular about him that makes you remember?
A. By his forehead. His eyes and his accent. The way he talked.
Q. Did he have an accent? What kind of accent did the man have?

*1155 A. Kind of like a Spanish or something like that. I don't know.
Q. Are you certain that the man that held you up had a Spanish accent?
A. What?
Q. Mr. Jackson, you said the man that held you up had a Spanish accent?
A. The one that robbed me.
Q. Are you sure?
A. Yes.
Q. Did you think Mr. Tillet had a Spanish accent?
A. The one that robbed me.
Q. Do you think that he had that Spanish accent? The one at the table? There is no way to tell. He didn't speak any English.
A. It's kind of the way that I feel.
Q. You said you could identify Mr. Tillet by his accent. Have you ever heard Mr. Tillet speak?
A. I know the fellow that came in that store and held me up."
Out of the presence of the jury defense counsel moved to allow defendant to read a passage of the court's choosing so as to demonstrate to the jury whether he spoke with a Spanish accent. He asked that such demonstration not expose him to cross-examination. The state argued that any such recital would have the effect of waiving defendant's privilege against self-incrimination and would thereby subject him to cross-examination. Defendant also asked that he be allowed to read a passage in camera. The trial court denied defendant's motions, ruling that any voice demonstration would waive defendant's fifth amendment privilege. Because defendant refused to waive his privilege, no reading took place. Defendant did not take the stand in his own behalf. He now argues that the trial court erred in its rulings, that the errors prejudiced his defense, and that his conviction should be reversed. We agree.
It has long been held that the compelled display of identifiable physical characteristics infringes no interests protected by the constitutional privilege against compulsory self-incrimination. In the case of Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that evidence of analysis of petitioner's blood taken over his objection was not inadmissible on the ground that it violated defendant's privilege against self-incrimination. There the Court stated:
"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling `communications' or `testimony,' but that compulsion which makes a suspect or accused the source of `real or physical evidence' does not violate it." 384 U.S. at 763-64, 86 S.Ct. at 1832. (citations omitted) (emphasis added)
This distinction between an act which communicates and an act which merely makes an accused's physical characteristics the subject of evidence has been consistently applied in fifth amendment analysis. In Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the United States Supreme Court held that the state's taking of a handwriting exemplar did not violate the accused's fifth amendment privilege. The Court stated that:
"One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection.

*1156 . . . No claim is made that the content of the exemplars was testimonial or communicative matter." 388 U.S. at 266-67, 87 S.Ct. at 1953. (emphasis added)
On the same day that Gilbert was handed down, the United States Supreme Court likewise held that the fifth amendment privilege against self-incrimination was not violated when the state required the defendant accused of a bank robbery to utter the words used by the robber. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The Court ruled that "compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly said by the robber, was not compulsion to utter statements of a `testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt." 388 U.S. at 222-23, 87 S.Ct. at 1930. Finally, in United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), it was held that requiring a defendant to produce voice exemplars was constitutionally acceptable because the voice recordings were to be used solely to measure the physical properties of the witnesses' voices, not for the testimonial or communicative content of what was to be said.
In Louisiana we have similarly allowed the state to compel a criminal defendant to exhibit his physical make-up, including his voice, without finding an infringement of his privilege against self-incrimination. We have compelled a defendant to put on a shirt, State v. Morgan, 333 So.2d 642 (La. 1976); to allow his height to be measured, State v. Roy, 220 La. 1017, 58 So.2d 323 (1952); and to exhibit a scar, State v. Anthony, 332 So.2d 214 (La.1976), a bruise, State v. Washington, 294 So.2d 794 (La. 1974), and a tatoo, State v. Wilson, 329 So.2d 680 (La.1976). Defendants in Louisiana have been forced to stand and identify themselves, State v. Jones, 261 La. 422, 259 So.2d 899 (1972), to give blood samples, State v. Dugas, 252 La. 345, 211 So.2d 285 (1968), cert. denied, 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691, and handwriting samples, State v. Thompson, 256 La. 934, 240 So.2d 712 (1970); and to demonstrate the manner in which they open cigarette packs, State v. O'Conner, 320 So.2d 188 (La.1975).
In the case of State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970), we held that the state could compel a defendant in an armed robbery case to say the words used by the robber ("Hurry up") without any infringement of the privilege against self-incrimination, saying that the words were:
"for the purpose of voice identification by the witness . . . . The words were not of a testimonial nature; they had no testimonial significance. The entire subject matter went to the jury for its consideration. The utterance and identification made therefrom were admissible evidence to be weighed by the jury in determining the guilt or innocence of the accused." 256 La. at 720, 237 So.2d at 879.
Under this federal and state jurisprudence, it is unquestionably clear that had the state sought to have defendant speak for the purpose of revealing whether he had a Spanish accent, defendant would have been required to do so, notwithstanding an effort on his part to invoke his constitutional privilege against self-incrimination. The words he spoke (which could have been any words of the judge's choosing) would not have been a communication of their content, but merely a display of a physical characteristic, i.e. an accent. Gilbert v. California, supra; Schmerber v. California, supra; State v. Lacoste, supra. Defendant's act in speaking would simply have made one of his physical characteristics the subject of evidence, and as such would not have been protected by his rights against self-incrimination.
Since the state could have compelled defendant to display the quality of his voice without infringing on his fifth amendment privilege, his offering to make such a demonstration could not have constituted a waiver of his privilege against self-incrimination. Waiver of the privilege is accomplished, in the case of a criminal defendant, when he voluntarily takes the stand to testify in his own behalf. Johnson *1157 v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937); Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926); State v. Smith, 283 So.2d 470 (La. 1973). Once a defendant knowingly and intelligently waives his privilege, he is of course subject to cross-examination on the whole case like any other witness. La. R.S. 15:462. However, defendant Tillett's request to reveal a physical characteristic would not have been testimony in his behalf, but merely a voice recital for the purpose of revealing a physical characteristic as evidence in the case. United States v. Wade, supra; United States v. Dionisio, supra; State v. Lacoste, supra; State v. Jones, supra. Therefore, his proposal to demonstrate his accent, or lack of it, did not waive his fifth amendment rights and make him liable to cross-examination. It has long been held that one of the essential ingredients of due process is reciprocity, see Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), and we hold that if the state can compel a criminal defendant to demonstrate his physical characteristics before the jury without infringing on his fifth amendment rights, a defendant's offer of such a demonstration does not constitute a waiver of that same right.
We find that the judge's error severely prejudiced defendant's case. The entire state case was based upon identification, and one of the two people who identified the accused as the robber said that he did so on the basis of his forehead, his eyes, and his Spanish accent. See testimony produced above. Although defendant's mother testified that her son had no Spanish accent, she also testified that he was an alien from Honduras, testimony which might indeed raise a question about whether defendant spoke with an accent. Under these circumstances we find that the trial judge's refusal to allow defendant to demonstrate his voice to the jury for their determination as to its qualities constitutes reversible error, and on this basis we remand the case for new trial.
Because we anticipate that one other of the issues on this appeal will arise at retrial of this case, we deem it appropriate to discuss that other assignment at this time.

ASSIGNMENT OF ERROR NO. 3
Defendant Tillett alleges that the trial court improperly denied his motion to suppress identification. Specifically, he contends that the lineup was impermissibly suggestive because the victim knew that defendant Tillett would be in the lineup, and because the defendant's skin color was noticeably lighter than that of any of the other men in the lineup.
We find no merit in this assignment. Although Mrs. Jackson did know that a suspect named Lindy Tillett would be in the lineup, the record does not reflect that she had ever seen him or a picture of him before, except, of course, on the occasion of the robbery. There is no indication at all in the record, and no allegation has been made, that she received any information from Mrs. Cook or from her son regarding his physical characteristics. The fact that a robbery victim knows that a named suspect will be in a lineup does not render that lineup impermissibly suggestive when, as here, the victim had no prior acquaintance with him nor any outside knowledge of his physical characteristics. Especially is this so where it was persons other than representatives of the state who told the victim that they suspected Tillett was the robber.
Moreover, we have studied the photograph taken of the lineup. It shows six men of approximately the same height, build and skin color dressed exactly alike. One of the men seems to be of a lighter color than defendant Tillett. We find nothing suggestive in the lineup. The resemblance between the men is sufficient to reasonably test identification. State v. Anthony, 347 So.2d 483 (La.1977). Therefore, we find that the motion to suppress identification was properly denied.
Because we find merit in Tillett's fourth and fifth assignments of error, we reverse his conviction and sentence, and remand the case for retrial.
NOTES
[1] While it is not particularly pertinent in view of our action herein vacating defendant's sentence, we notice that the minutes reflect that the accused was sentenced to serve fifteen years as to R.S. 14:64 (the armed robbery) and thirty-three and one-half years as to R.S. 15:529.1 (as a multiple offender), the two sentences to run concurrently. If the minutes accurately reflect the sentence imposed by the trial court, the sentence is erroneous. Louisiana Revised Statute 15:529.1 permits only one sentence to be imposed for a single crime and the previous sentence, if any, is vacated coincident with imposition of the enhanced penalty.
[2] Two of the defendant's five original assignments have not been briefed and are therefore considered waived. State v. Phillips, 337 So.2d 1157 (La.1976).