Lenora BOYD, Plaintiff-Appellant,

v.

CIVIL SERVICE COMMISSION OF the CITY OF ST. LOUIS, St. Louis Department of Health & Hospitals, Hospital Division, Defendants-Respondents.

No. 45818.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 23, 1983.

Frances Dianne Taylor, St. Louis, for plaintiff-appellant.

Judith A. Ronzio, Associate City Counselor, St. Louis, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

This is an appeal from an order of the Circuit Court of the City of St. Louis, affirming a decision of the Civil Service Commission of the City of St. Louis, which in turn affirmed a decision to terminate appellant from her position as a Hospital Attendant I at City Hospital. The testimony at the evidentiary hearing before the Commission was as follows:

Appellant Lenora Boyd was terminated because of her participation "in a scheme of forgery, deception & misrepresentation to obtain unauthorized drugs." A co-worker, Pamela Navy, had filed an "incident report" with hospital personnel stating that appellant came to her on October 8, 1978

asking for a prescription blank and a doctor's name. Navy stated that she refused to help appellant. Later Navy found that an incorrect prescription had been given to one of her patients, Johnnie Knowles. Navy told appellant to call the patient and tell him not to take the medication. Navy and appellant together went with some friends of appellant's to the patient's home. Navy talked to the patient and family and retrieved the pills, which she gave back to appellant. Appellant later explained to Navy that she had told the pharmacist over the phone that she was Ms. St. Clair.

Cornella Knowles testified that her husband, Johnnie Knowles, had been released from City Hospital on October 8, 1978. Before leaving, he was given some medicine from the hospital pharmacy. Later that day, she received a call from the hospital. Someone came from the hospital and exchanged the medicine for another bottle. Ms. Knowles did not remember what the person from the hospital looked like but stated that it was not either Navy or the appellant.

Karen Falwarski, a pharmacist at the hospital, testified that on October 8, 1978, she filled a prescription for pyribenzamine signed by Don Taylor, M.D. She testified that she was concerned first, because pyribenzamine was a highly abused drug (combined with another drug, it produced a heroin-like high) which was not usually prescribed and second, because she knew that Dr. Taylor, a medical student, was no longer working at the hospital. She called the ward where the prescription had originated in order to check its accuracy. The person who answered the phone identified herself as "Miss Sinclair," and stated that the doctor was not available, but that the prescription was ok. The pharmacist wrote "ok by Miss Sinclair" on the bottom of the prescription.

Marjorie St. Clair testified that she was the nurse in charge of the division where the prescription had originated. She testified that Johnnie Knowles was a patient in her ward and that he was not taking pyribenzamine. She was on duty on October 8, 1978, and did not receive any phone calls that day concerning a prescription for Johnnie Knowles.

Mary Jones, a Medical Records Technician from City Hospital, testified that Johnnie Knowles' medical records did not show any prescription for pyribenzamine.

William Storer, a qualified document examiner, testified that he had examined the handwriting on the questioned prescription in comparison with several handwriting samples. The samples were offered into evidence as the City's "Exhibit B." All of the samples were photocopies rather than originals. One sample page was a personnel questionnaire bearing the signature "Donald A. Taylor, M.D." Another sample page was a letter requesting a change of work schedule, signed "Pamela Navy" at the bottom. Nine pages of samples were attributed to Lenora Boyd. Seven of these appeared to be copies of a test or examination on hospital procedures; one was a hospital "incident report;" another was a letter addressed "to whom it may concern" discussing an incident which occurred at the hospital. All but one of these pages bore the signature "Leonora Boyd." No attempt was made to authenticate the signatures on these documents by either direct or circumstantial evidence, or to qualify the documents as business records pursuant to § 536.070(9) and (10), RSMo1978.

Storer testified that the handwriting on the questioned prescription was definitely not the same as the handwriting on the Taylor or Navy exemplars, but did bear strong similarities to the handwriting on the Boyd exemplars. However, because there was so little writing on the prescription, Storer was unable to definitely conclude that the writer of the Boyd exemplars was the same as the writer of the prescription.

The Commission upheld appellant's dismissal, and its decision was affirmed by the circuit court. Appellant here contends that the Commission's decision was not supported by competent and substantial evidence, because the Commission never formally admitted the handwriting samples as

evidence, and further because those samples were not authenticated as required by § 490.640 RSMo 1978. Appellant maintains that without the testimony of the handwriting examiner there was insufficient evidence to support her dismissal.

Section 490.640 provides that: "Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses, and such writing and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute." In interpreting this standard, Missouri courts have noted that "there is no precise method by which a specimen must be proved to be genuine and the proof may be either direct or circumstantial . . . . The courts have not restricted the manner in which specimens may be proved genuine and each case must be viewed on its own facts . . . . The action of the court in admitting or rejecting a specimen as a standard, is a matter of discretion. Its action is final and conclusive unless based on an error of law, or on evidence which is, as a matter of law, insufficient to justify its finding." (Citations omitted.) *State v. Clark,* 552 S.W.2d 256, 264 (Mo.App.1977) affirmed 592 S.W.2d 709 (Mo.1979), cert. den. 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 57 (1980). The fact that a judge admitted a document into evidence indicates his satisfaction with proof of its genuineness. *State v. Clark,* 592 S.W.2d at 717. Appellant argues that the exemplars offered by the City cannot be considered as evidence because the Commission did not explicitly rule that they would be received. We disagree. Strict adherence to courtroom procedure is not required of administrative bodies, particularly those composed of laymen. *Hilke v. Firemen's Retirement System of St. Louis,* 441 S.W.2d 730, 732–733 (Mo.App.1969). The transcript of the administrative hearing shows that Exhibit B was marked but never offered into evidence. The Commission did not make any explicit oral ruling accepting the exemplars

into evidence. The Commission either denied or did not rule on appellant's objections to Exhibit B and to Storer's testimony. When the appellant's counsel, in closing argument, asserted that Exhibit B was not in evidence, he was informed by the Commission's Chairman: "Excuse me, counselor, may I interrupt. This document your're talking about was introduced [sic] as City's B."[1] This statement, together with the fact that the Commission permitted Storer to testify concerning these documents, suggests that the Commission was satisfied with the genuiness of the exemplars and considered them to be part of the evidence. *Hilke v. Fireman's Retirement System of St. Louis,* 441 S.W.2d at 733. We hold that the documents were made part of the evidence.

We next consider whether there was any substantial evidence from which the Commission could reasonably have concluded that the exemplars were genuine. While it is true that administrative proceedings are less formal than proceedings before courts, it is also true that administrative bodies are bound by basic evidentiary limits. *Dickinson v. Lueckenhoff,* 598 S.W.2d 560, 563 (Mo.App.1980). Section 490.640 expresses such a "basic evidentiary limit" by requiring that there be *some* proof of genuiness—enough to establish the authenticity of the exemplars "to the satisfaction of the judge." There are several acceptable methods by which handwriting samples may be authenticated in order to satisfy the requirements of § 490.640. *State v. Clark,* 552 S.W.2d at 264–266 and 592 S.W.2d at 717; *see generally* McCormick on Evidence, § 221 et seq.; *i.e.* Imwinkelreid, Evidentiary Foundations, at page 55 et seq. (1980). Yet the transcript discloses that the City did not present any evidence, either direct or circumstantial, tending to show that the exemplars submitted were in fact written by Lenora Boyd. The *only* evidence of their origin was the fact that they bore the name "Lenora Boyd" and the fact that their contents suggested that they had been obtained from hospital files. This informa-

---

1. Apparently the chairman equated "introduc- tion" with "admission."

tion alone would *not* be adequate to qualify the exemplars under any of the methods of authentication discussed in *State v. Clark* or the treatises cited above. Because no proper foundation was laid for the testimony of the document examiner, we hold that this testimony was not "competent and substantial evidence" upon which the Commission could base its decision.

 Nevertheless, we find that there was other competent and substantial evidence in the record sufficient to support appellant's dismissal for "participating in a scheme to obtain" unauthorized drugs, even if forgery could not be proved. The Commission was entitled to believe those parts of the testimony which tended to show that appellant was seen in the ward where the false prescription originated, sought to obtain a prescription blank, asked for the name of a doctor, bragged about impersonating a supervisor on the phone, and took it upon herself to retrieve the improper medication which a patient had received. These circumstances could properly give rise to an inference that appellant had participated in a scheme to obtain unauthorized drugs. The decision of the circuit court, affirming the decision of the Commission, is therefore affirmed.

SMITH and KELLY, JJ., concur.